# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **ANNIE L. MZYK,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | **SA-14-CA-0952-HLH** |
| **NORTH EAST INDEPENDENT** | § | |
| **SCHOOL DISTRICT,** | § | |
| *Defendant.* | § | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

To the Honorable Harry Lee Hudspeth, U.S. District Court Judge:

Defendant North East Independent School District ("NEISD" or the "District") files this Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, and would respectfully show as follows:

## I.  INTRODUCTION

This case arises from a complaint of alleged discrimination made by Plaintiff, Annie L. Mzyk ("Plaintiff"), a current District employee. Through her lawsuit, Plaintiff has alleged discrimination and retaliation because of her age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 601 *et seq.*; and discrimination, failure to accommodate, and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102 *et seq. See* Plaintiff's Complaint, Docket #1 at ¶ 1; Plaintiff's Motion to Supplement Complaint Section #7, Docket # 3. For the reasons discussed below, Plaintiff's claims lack merit and should be dismissed in their entirety.

EXHIBIT A

## II.   BACKGROUND INFORMATION

**A.**   ***Statement of facts***

Plaintiff has been a full-time employee of the District for over twenty years, and has served in various positions in the District's Adult and Community Education Department ("Community Education"). From the 2007–2008 school year through the 2011–2012 school year, Plaintiff worked as a Level II Administrative Assistant to Rebecca Gossen, who worked as a Community Education Director and Senior Director during that time. *See* Exh. 1, Gossen Affidavit at ¶ 3.

Prior to the start of the 2012–2013 school year, Ms. Gossen was promoted to the position of Executive Director of Adult and Community Education, and Plaintiff was subsequently promoted to serve as the Administrative Assistant to the Executive Director. *See id.* at ¶¶ 4–5; Exh. 2. As a result of this promotion, Plaintiff received an increase in pay from pay grade C7 to pay grade C9. *See* Exh. 1, Gossen Affidavit at ¶ 5; Exh. 2. Plaintiff has worked as Ms. Gossen's Administrative Assistant since her promotion in July 2012. *See* Exh. 1, Gossen Affidavit at ¶ 7.

As is common with most promotions, Plaintiff's involved an increase in pay and an increase in job duties for which she received the higher pay grade. Specifically, the job description for Plaintiff's current position includes the following "major responsibilities" that are relevant to Plaintiff's lawsuit:

- Perform secretarial duties for the Executive Director for Adult & Community Education.
- Handle phone and written communication.
- Retrieve voice mail messages for Community Education's main line.
- Respond to email communications directed to Community Education.
- Process registrations received by mail, telephone, fax and in person.
- Prepare and distribute punch cards to participants enrolled in classes requiring them.
- Report to work on time every day.

*See* Exhibit 1, Gossen Affidavit at ¶ 6 and Exh. A. Plaintiff's job description has not changed since her promotion in July 2012. *See id.* at ¶ 7.

Shortly after accepting her promotion and increased pay, Plaintiff delivered a letter to Ms. Gossen dated September 24, 2012, in which Plaintiff wrote that she had recently changed leukemia medication[1] and that her physician had advised her to "avoid close fact-to-face [*sic*] contact with the general public," and requesting that she be relieved from her reception desk duties as well as the duty to process GED registrations for an indeterminate time. *See id.* at ¶ 8 and Exh. B.

On September 25, 2012, the District's Director of Risk Management, Mario Ward, and the ADA Coordinator at the time, Melissa Gonzales, met with Plaintiff and Ms. Gossen to discuss Plaintiff's requested accommodations. *See id.* at ¶ 9; Exh. 3, Ward Affidavit at ¶ 3. During the meeting, Mr. Ward explained that the District would need additional information from her physician in order to learn more about the specific medical limitations and consider her requested accommodations, and gave Plaintiff a release form to sign and provide to her doctor. *See* Exh. 1, Gossen Affidavit at ¶ 9; Exh. 3, Ward Affidavit at ¶¶ 8–10. This is part of the District's interactive process it enters when employees request accommodations. *See* Exh. 3, Ward Affidavit at ¶ 8.

Mr. Ward followed up with Plaintiff on September 27, 2012 and asked her to return a signed medical release form so that NEISD could obtain additional information from her physician.[2] *See id.* at ¶ 13 and Exh. D. Later that day, Plaintiff informed Mr. Ward that she did not find it necessary to return a signed release agreement, and that she would not be providing any additional information related to her condition. *See id.* at ¶ 14 and Exh. E. This was of no

---

[1] The District learned that Plaintiff had been diagnosed with chronic leukemia sometime in February 2011, when Plaintiff submitted a letter from her physician discussing her health condition. *See* Exh. 3, Ward Affidavit at ¶ 9 and Exh. B.

[2] On September 26, 2012, Mr. Ward sent Plaintiff's doctor a courtesy copy of the release form provided to Plaintiff, along with a letter informing the doctor that the District needed additional information about Plaintiff's condition in order to respond to her request for accommodations. *See* Exh. 3, Ward Affidavit at ¶ 11 and Exh. C. Mr. Ward never received a response from Plaintiff's physician. *See id.* at ¶ 12.

help to the District, as the only recent medical information NEISD had on file was a February 11, 2011 letter from Plaintiff's doctor informing of her initial diagnosis of leukemia. *See id.* at Exh. B.

At various times after submitting her September 25, 2012 letter, Plaintiff asked Ms. Gossen for permission to work overtime in order to make up for time she might miss for doctor's appointments. *See* Exh. 1, Gossen Affidavit at ¶ 10. Ms. Gossen informed Plaintiff that District policy did not allow employees to work overtime simply so that they can take days off in the future, and that Plaintiff would need to use her accumulated leave time if she missed work for doctor's appointments. *See* Exh. 1, Gossen Affidavit at ¶ 10; Exh. 4.

On July 22, 2013, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), through which she claimed age and disability discrimination, as well as retaliation, for the following reasons:

> . . . requested and been denied reasonable accommodations for my disabilities; relief from covering the reception desk, voice mail be directed to another coworker, be allowed to come in early and/or stay late to make up time for my doctors' appointments and been denied overtime and/or accrual time.

*See* Exh. 5.

On July 23, 2013—the day after filing her EEOC Charge—Plaintiff notified Ms. Gossen and her co-workers that she would be hospitalized during the week of July 29–August 2, 2013 and would miss work during that time. *See* Exh. 1, Gossen Affidavit at ¶ 11. Ms. Gossen reminded Plaintiff that, as required by District policy, she would need to provide a medical certification following an absence of five consecutive workdays. *See id.* at ¶ 11; Exh. 4.

Plaintiff returned to work on August 5, 2013, and brought with her two doctor's notes describing her condition. The first of these notes, dated August 2, 2013, stated that Plaintiff had "developed aplastic anemia" and that, while she "desire[ed] to go back to work," she would

"need to wear a mask and her work may be interrupted by a need for frequent doctor visits." *See* Exh. 1, Gossen Affidavit at ¶ 12 and Exh. C. The second note, dated August 4, 2013, noted that Plaintiff "***may not be around large groups of people, [and] should limit contact with strangers***." *See id.* at ¶ 13 and Exh. D (emphasis added).

Plaintiff also gave Ms. Gossen a letter requesting "accommodations" for her disabilities, in which she wrote:

> . . . [f]or the next week or so, ***I will need to be going to the clinic every other day*** for blood work and additional testing. Due to a very low white blood count, it is standard medical procedure ***to avoid being close to sick people*** and to avoid contact with unsanitary surfaces. I am also required to wear a mask when there is a known potential exposure to any bacteria, virus, or fungus. Additionally, I cannot prepare or eat any uncooked foods.

*See id.* at ¶ 14 and Exh. E (emphasis added). Additionally, Plaintiff sent an e-mail to everyone in Community Education stating that she was "anemic with a low blood count," and directing everyone to "let me know if you are running a fever or not feeling well as ***I am not to be exposed to any illness***." *See id.* at ¶ 15 and Exh. F (emphasis added).

Ms. Gossen immediately informed Mr. Ward of Plaintiff's requested accommodations. *See id.* at ¶ 16; Exh. 3, Ward Affidavit at ¶ 16. Later in the day on August 5, 2013, Mr. Ward, Ms. Gonzales, and Ms. Gossen met with Plaintiff to discuss her request. *See* Exh. 1, Gossen Affidavit at ¶ 16; Exh. 3, Ward Affidavit at ¶ 16. During the meeting, the District's administrators discussed their concern for Plaintiff's condition and their desire to ensure Plaintiff's safety and continued health. *See* Exh. 1, Gossen Affidavit at ¶ 16; Exh. 3, Ward Affidavit at ¶¶ 17–20. As the parties discussed Plaintiff's requested accommodations, it became clear that the District had no way to prevent Plaintiff from being exposed to people who *might* be ill, particularly since the Adult and Community Education Department and the building in which it is housed has heavy public traffic, and there was no practicable way for every individual who

happened to go near Plaintiff during the day to tell her if they were "running a fever or not feeling well," as she had requested. *See* Exh. 1, Gossen Affidavit at ¶ 16; Exh. 3, Ward Affidavit at ¶ 20–21.

At the conclusion of the meeting, it was determined that the best option would be for Plaintiff to take time off from work to rest and recover, because of the potential risk of exposure to an illness that her immune system could not combat and her statement that she would need to miss work every other day for clinic visits. *See* Exh. 1, Gossen Affidavit at ¶ 16; Exh. 3, Ward Affidavit at ¶¶ 20–22. Plaintiff subsequently filed a written request to take a full-time leave of absence. *See* Exh. 1, Gossen Affidavit at ¶ 16; Exh. 3, Ward Affidavit at ¶ 22 and Exh. F. Plaintiff was not forced to submit this leave request. *See* Exh. 1, Gossen Affidavit at ¶ 17; Exh. 3, Ward Affidavit at ¶ 23. Plaintiff's request for leave was granted on August 7, 2013, with an effective date of August 6, 2013 for her leave under the Family and Medical Leave Act ("FMLA"). *See* Exh. 3, Ward Affidavit at ¶ 24 and Exh. G.

Plaintiff continued her FMLA leave through the first week of October 2013. *See* Exh. 1, Gossen Affidavit at ¶ 18; Exh. 3, Ward Affidavit at ¶ 25. Her return was preceded by a return to work form dated October 3, 2013, which included a form from her physician clearing her to return to work on October 7, 2013. *See* Exh. 6. The form from Plaintiff's doctor also noted that Plaintiff needed "weekly clinic visits," and that she would need to work "four days a week[] for 3 months," when her condition could be re-evaluated. *See id.*

Plaintiff returned to work as scheduled on October 7, 2013, and began working four-day weeks, taking either Tuesday or Wednesday off each week for her clinic visits. *See* Exh. 1, Gossen Affidavit at ¶ 19 and Exh. G. Plaintiff continued taking Tuesday or Wednesday off each week until the week of December 2, 2013, when she worked each day from Monday through

Thursday. *See id.* at ¶ 20 and Exh. G. On Thursday, December 5, 2013, Ms. Gossen reminded Plaintiff that her doctor's note stated she was only able to work four days a week, and that she would need to take the following day off from work as she had already worked four days that week. *See id.* at ¶ 20 and Exh. H. Plaintiff did not report to work on Friday, December 6, 2013. *See id.* at ¶ 21 and Exh. G.

Plaintiff returned to work the following Monday and, on December 12, 2013, provided an updated doctor's note stating that she was "released to return to work 5 days per week on a full time basis." *See id.* at ¶ 22 and Exh. I. After providing this updated information, Plaintiff resumed working a five-day workweek. *See id.* at ¶ 23.

Ms. Gossen and Ms. Gonzales held a conference with Plaintiff on December 18, 2013 to discuss her return to a full-time schedule and to remind Plaintiff of the District's expectations for her job performance. *See* Exh. 1, Gossen Affidavit at ¶ 24 and Exh. J. This included a reminder that Plaintiff was to assist individuals on the phone before transferring them to someone else in Community Education, answer all voicemail and e-mail messages in a timely manner, assist individuals who came into the office to register, complete punch card forms for customers, and to provide equitable assistance to all of her co-workers instead of "picking and choosing" who to assist. *See id.* The job duties Ms. Gossen discussed came from Plaintiff's current job description. *See id.* at Exh. A.

On January 3, 2014, Plaintiff filed an Amended Charge of Discrimination with the EEOC. *See* Exh. 7. In this filing, Plaintiff repeated her earlier claims of age and disability discrimination and retaliation, and also complained that she had been "denied make up time for my medical appointments/treatments," and that she believed NEISD was "attempting to deny me

leave without pay because I have no leave left except for FMLA pay." *See id.* She further complained that the District was "attempting to overload me with work." *See id.*

After Plaintiff returned to a full-time schedule, Ms. Gossen observed several issues with Plaintiff's performance of her essential job functions. This included customer complaints about errors in issuing and purchasing water aerobics cards; registering customers and their family members for the wrong classes; failing to keep up with phone calls and e-mails; errors in processing credit card orders and registration payments; errors in communications with customers; errors in processing and billing for facility maintenance requests; and various other issues. *See* Exh. 1, Gossen Affidavit at ¶ 24 and Exh. K. Based on these documented concerns, Ms. Gossen rated the majority of Plaintiff's performance as "marginal" or "requires improvement" in Plaintiff's annual performance appraisal for the 2013–2014 school year. *See id.* at ¶ 24 and Exh. L.

Within weeks of receiving this evaluation, Plaintiff filed a Second Amended Charge of Discrimination with the EEOC, alleging disability discrimination and retaliation because she was "given a poor evaluation on June 6, 2014" by Ms. Gossen. *See* Exh. 8. By letter dated July 30, 2014, the EEOC informed Plaintiff and NEISD that it had completed its investigation of Plaintiff's claims, and was unable to conclude that unlawful discrimination or retaliation had occurred. *See* Exh. 9.

**B.** **_Plaintiff's claims_**

Plaintiff filed her lawsuit on October 29, 2014, and has repeated her complaints to the EEOC of discrimination and retaliation based on her age and disability. While Plaintiff has offered very little in the way of a factual description of any of her claims, the District understands that Plaintiff has made the following claims, each of which will be discussed in turn below:

1.  Age and disability discrimination by the District allegedly assigning "excessive duties" to her in comparison to other members of Community Education, *see* Plaintiff's Complaint, Docket #1 at ¶ 8a(1);

2.  Age and disability discrimination because the District has allegedly transferred "simple but time consuming clerical work" to her that could have been assigned to another member of Community Education, *see* Plaintiff's Complaint, Docket #1 at ¶ 8a(4);

3.  Age and disability discrimination because NEISD has allegedly "prohibit[ed] [Plaintiff] from accruing extra overtime for sick leave, *see* Plaintiff's Complaint, Docket #1 at ¶ 8a(5);

4.  Retaliation for having filed an EEOC Charge because NEISD has allegedly "increase[ed] [Plaintiff's] assignments to create work overload and work stress causing errors to create reprimands," which resulted in Plaintiff receiving an unfavorable performance rating in June 2012, *see* Plaintiff's Complaint, Docket #1 at ¶ 8a(3);

5.  Failure to accommodate Plaintiff's disability because NEISD has allegedly "refus[ed] to transfer Main Line voice mail to another employee with light work duties," *see* Plaintiff's Complaint, Docket #1 at ¶ 8a(2); and

6.  Failure to accommodate Plaintiff's disability because the District allegedly "ordered" and "forced [Plaintiff] to sign an application for FMLA sick leave" after Plaintiff returned to work on August 5, 2013 after a brief hospital stay, *see* Plaintiff's Complaint, Docket #1 at ¶ 8a(6).

NEISD has never discriminated or retaliated against Plaintiff, and has never failed to accommodate a request for a reasonable accommodation that would allow Plaintiff to perform the essential functions of her position as Administrative Assistant to the Executive Director. *See* Exh. 1, Gossen Affidavit at ¶¶ 28–33; Exh. 3, Ward Affidavit at ¶¶ 27–33.

### III.   ARGUMENT AND AUTHORITIES

#### A.   *Summary judgment standard*

Summary judgment is appropriate when the court finds that "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists if the evidence would allow a reasonable jury to

find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact; however, the movant is not required to negate elements of the nonmovant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431–32 (5th Cir. 1998).

If the movant carries its initial burden, the nonmovant must then present competent summary judgment evidence demonstrating the existence of a genuine issue of material fact and supporting the essential elements of its claim. *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 712 (5th Cir. 1994). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The nonmovant must present specific facts showing the existence of a genuine issue of material fact, and may not rely on mere allegations, denials in pleadings, or unsubstantiated assertions of factual issues. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *see also State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990) (noting "there must be evidence on which the jury could reasonably find for the plaintiff"). Conclusory allegations not supported by credible evidence are insufficient to demonstrate a genuine issue of material fact. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Nat'l Ass'n of Gov't Employees*, 40 F.3d at 713. When conducting its review of the record, the court considers the evidence in the light most favorable to the nonmovant. *Matsushita Elec. Indus. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Nat'l Ass'n of Gov't Employees*, 40 F.3d at 712–13.

**B.**     *Plaintiff's Age Discrimination Claims Fail as a Matter of Law*

The ADEA makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

Plaintiff has raised three general allegations of age discrimination. First, she complains that she has been discriminated against because she has been assigned "excessive duties" in comparison to other employees in Community Education. *See* Plaintiff's Complaint, Docket #1 at ¶ 8a(1). Next, she claims discrimination because NEISD has transferred "simple but time consuming clerical work" to her that should have been assigned to another employee. *See* Plaintiff's Complaint, Docket #1 at ¶ 8a(4). Finally, she alleges discrimination because the District prohibited her from "accruing extra overtime for sick leave." *See* Plaintiff's Complaint, Docket #1 at ¶ 8a(5). Each of these claims must fail.

1. ***Proving a prima facie case of age discrimination***

Age discrimination can be established through either direct or circumstantial evidence. *See Laxton v. Gap, Inc*., 333 F.3d 572, 578 (5th Cir. 2003). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003) (quotation omitted). When no direct evidence of discriminatory intent is presented, "the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, [411 U.S. 792 (1973)] applies to [the plaintiff's] claims." *Kean v. Jack Henry & Assocs.*, 577 Fed. App'x 342, 349 (5th Cir. 2014) (citing *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005)). Under this framework, the plaintiff must satisfy an initial burden of establishing a prima facie case of age discrimination. *See Miller v. Raytheon Co.*, 716 F.3d 138, 144 (5th Cir. 2013). This involves a demonstration that the

plaintiff (1) is over forty years of age; (2) is qualified for the position; (3) has been subjected to an adverse employment action; and (4) was replaced by someone younger or treated less favorably than similarly situated younger employees. *See, e.g.*, *Jackson v. Honeywell Int'l, Inc.*, 601 Fed. App'x 280, 289 (5th Cir. 2015); *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003)).

If the plaintiff meets this initial burden, the burden shifts to the defendant to articulate, but not prove, a legitimate and nondiscriminatory reason for its employment decision. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 (2003); *Squyres v. Heico Companies*, 782 F.3d 224, 231 (5th Cir. 2015). The employer's burden is one of "production, not persuasion," and does not involve any credibility assessment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). If the employer's burden is met, burden-shifting analysis disappears, along with its presumptions and burdens. *See id.* at 142–43. The plaintiff must then demonstrate "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 143. Ultimately, the employee must "***prove that age was the 'but-for' cause of the employer's adverse decision***." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (emphasis added); *see also Squyres*, 782 F.3d at 231.

    i.  *Plaintiff has not been assigned "excessive duties" in comparison to other "similarly situated" employees*

In her first claim of age discrimination, Plaintiff complains that she has been assigned "excessive duties" when compared to three of her co-workers in Community Education: Training Specialist Mary Kay Alvarez, Specialist Landy Rodriguez, and Specialist Iris Trevino. *See* Plaintiff's Complaint, Docket #1 at ¶ 8a(1); Exh. 10, Mzyk Depo. at p. 21:10–12 ("Q. And you specifically compare yourself with Mary Kay Alvarez, Landy Rodriguez, and Iris Trevino? A. That's correct."). Plaintiff's "evidence" of discriminatory treatment is that her current job

description lists 23 duties, while Ms. Alvarez has 16 duties, Ms. Rodriguez has 13 duties, and Ms. Trevino has eight duties. *See* Plaintiff's Complaint, Docket #1 at ¶ 8a(1); *see also* Exh. 1, Gossen Affidavit at Exh. A; Exhs. 11–13. These comparisons do not help Plaintiff make her case, however, as neither Ms. Alvarez, Ms. Rodriguez, nor Ms. Trevino are "similarly situated" to Plaintiff, as required to make a prima facie showing of discrimination. *See, e.g.*, *Jackson*, 601 Fed. App'x at 289; *Smith*, 351 F.3d at 196.

The Fifth Circuit defines "similarly situated" employees very narrowly. *See Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009). Similarly situated employees must be "nearly identical," and must also fall outside the plaintiff's protected class. *See Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005). The "nearly identical" standard is stringent, in that employees with different responsibilities, different supervisors, different capabilities, and different discipline histories or records are not considered to be "nearly identical." *See Lee*, 574 F.3d at 259–60.

To begin, Plaintiff cannot show that Ms. Alvarez and Ms. Trevino fall outside her protected class, as Ms. Alvarez is 58 years of age and Ms. Trevino is 55 years of age.[3] *See* Exh. 1, Gossen Affidavit at ¶¶ 37, 39; Exh. 10, Mzyk Depo. at p. 82:2–4 ("I do know that Iris and Mary Kay are both over 40. I know that Mary Kay is over 50."). Ms. Alvarez and Ms. Trevino therefore are not similarly situated to Plaintiff, and cannot be used as a comparison to prove discrimination. *See Wheeler*, 415 F.3d at 405 (requiring co-workers used for comparison to fall outside of the plaintiff's protected class).

Additionally, neither Ms. Alvarez, Ms. Rodriguez, nor Ms. Trevino are similarly situated to Plaintiff as they all have markedly different job responsibilities. This is demonstrated by the

---

[3] Ms. Rodriguez is 31 years of age, and therefore falls outside of Plaintiff's protected class. *See* Exh. 1, Gossen Affidavit at ¶ 38. Even with this, Ms. Rodriguez still is not similarly situated to Plaintiff.

job descriptions for each of these individuals, *see* Exhs. 11–13, as well as Plaintiff's deposition

testimony:

> Q.   As a Community Education Specialist, does Ms. Trevino have different job duties than you do?
> A.   Yes, she does.
> Q.   As a Community Education Specialist, doesn't Landy Rodriguez have different job duties than you do?
> A.   Yes, she does.
> Q.   As a Community Education Training Specialist, doesn't Ms. Mary Kay Alvarez have different job duties than you do?
> A.   Yes, they [*sic*] do.

*See* Exh. 10, Mzyk Depo. at p. 36:14–23.

Moreover, Plaintiff has a higher pay rate than Ms. Alvarez, Ms. Rodriguez, or

Ms. Trevino. Specifically, Plaintiff's position is assigned to pay grade C-9, Ms. Alvarez's

position is assigned to pay grade C7, Ms. Rodriguez's position is assigned to pay grade C8, and

Ms. Trevino's position is assigned to pay grade C5, which are all lower than Plaintiff's. *See*

Exh. 1, Gossen Affidavit at ¶¶ 5, 37–39 and Exh. A; Exhs. 11–13. Plaintiff understands that she

has a higher pay grade than any of the employees she identified for comparison. *See* Exh. 10,

Mzyk Depo. at p. 22:2–6 ("Q. So the administrative—as the Administrative Assistant to the

Executive Director, you are on pay grade C-9 which is a higher pay grade than all the other three

individuals; isn't that right? A. Yes, it is."); p. 27:22–24 ("Q. The other people in your

department are not on your pay grade, are they? A. No, they're not.).

For each of these reasons, none of the employees identified by Plaintiff are similarly

situated to her for purposes of proving discrimination under the ADA, as they are not all outside

of Plaintiff's protected class, they have wholly separate job duties than Plaintiff, and they are all

assigned to positions with lower pay grades than Plaintiff's position. *See, e.g.*, *Martin v. Budget

Rent-A-Car Sys. Inc.*, 432 Fed. App'x 407, 410–11 (5th Cir. 2011) (determining employees with

different positions and separate job responsibilities were not similarly situated for purposes of making a prima facie case of discrimination); *Hockman v. Westward Commc'ns, L.L.C.*, 282 F. Supp. 2d 512, 527–28 (E.D. Tex. 2003) (concluding that employees were not "similarly situated" or "nearly identical" when they were assigned to different positions and earned different salaries).

During her deposition, Plaintiff acknowledged that she could not compare herself to Ms. Alvarez, Ms. Rodriguez, and Ms. Trevino in order to prove discrimination, and that she instead should have compared herself to other Administrative Assistants to Executive Directors:

> Q.     Do you agree with me, ma'am, that the appropriate comparison to make for you to determine whether you've been treated differently or not is ***to other Administrative Assistants to Executive Directors in the School District***? Do you not?
> A.     Yes.
> Q.     That's because you're all on the same pay grade, are you not?
> A.     We're all on the same pay grade.

Exh. 10, Mzyk Depo. at p. 33:5–13 (emphasis added), p. 50:21 ("I wasn't comparing myself to them [other Administrative Assistants to Executive Directors]."). Plaintiff also testified that she has no information showing that she has been "treated differently than any other C-9's in the District." *Id.* at p. 34:22–35:3.

By failing to identify any other of the District's Administrative Assistants to Executive Directors who are under the age of 40 and that have not been assigned "excessive duties," Plaintiff has failed her burden to make an initial prima face case of discrimination under the ADEA.[4] *See, e.g.*, *Jackson*, 601 Fed. App'x at 289; *Smith*, 351 F.3d at 196.

Therefore, Plaintiff's only "evidence" of discrimination is her own subjective belief:

---

[4] Representative samples of job descriptions for other Administrative Assistants to Executive Directors are included as Exhibit 16 to this Motion.

> Q.     So ultimately, ma'am, ***your lawsuit is . . . based on your belief that you're being discriminated against; isn't that correct?***
> A.     Yes.

Exh. 10, Mzyk Depo. at p. 14:12–16 (emphasis added). This subjective belief is not enough for Plaintiff to defeat summary judgment. *See, e.g.*, *Morris*, 144 F.3d at 380 (recognizing the nonmovant may not rely on mere allegations, denials in pleadings, or unsubstantiated assertions of factual issues); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasizing summary judgment is appropriate where the nonmovant relies upon "conclusory allegations" or "unsubstantiated assertions"). Plaintiff's claim that NEISD has discriminated against her because of her age by assigning her "excessive duties" must be dismissed.

### ii.     *NEISD has not assigned "simple but time consuming clerical work" to Plaintiff because of her age*

Plaintiff's next complaint is that the District allegedly transferred "simple but time consuming clerical work" to her that could have been assigned to another Community Education employee. *See* Plaintiff's Complaint, Docket #1 at ¶ 8a(4). Specifically, Plaintiff complains that she is responsible for processing water aerobics punch cards, and that Ms. Rodriguez should handle this job. *See id.*

The District is confused by this complaint, as Petitioner's job description plainly states that one of her essential job functions is to "***[p]repare and distribute punch cards*** to participants enrolled in classes requiring them." Exh. 1, Gossen Affidavit at Exh. A, item 12. This responsibility was communicated clearly to Plaintiff in July 2012, when she accepted the promotion to the position of Ms. Gossen's Administrative Assistant. *See id.* at ¶ 6 and Exh. A. Thus, Plaintiff was plainly aware of this responsibility ***before September 25, 2012***, which is the first date on which she claims the District discriminated against her, and accepted her promotion knowing that she would have this responsibility. *See* Plaintiff's Complaint, Docket #1 at ¶ 4; *see*

*also* Exh. 10 Mzyk Depo. at p. 38:16–20 (Plaintiff acknowledges that she accepted the Administrative Assistant to the Executive Director position with the job description approved June 28, 2012). Plaintiff has not explained how the District could have discriminated against her by assigning a job responsibility to her that was clearly communicated to her ***before*** she accepted a promotion.

Plaintiff also has not presented any evidence showing that the addition of water aerobics punch card processing in the June 28, 2012 job description for her position was related to her age:

> Q.     Okay. So have you seen any—or has anyone ever told you at the [District] that this job duty was added because of your age?
> A.     No.
> Q.     Have you ever overheard or are aware of any conversations where Ms. Gossen or anybody else at [the District] discussed adding this job duty as a result of your age?
> A.     No.
> Q.     So at this time do you have any other evidence to show the jury other than your own belief that this job duty had anything to do with age?
> A.     No.

Exh. 10, Mzyk Depo. at p. 82:9–22. Plaintiff is once again left with nothing more than her subjective belief that she has been discriminated against, and this subjective belief is not enough to overcome summary judgment. *See, e.g.*, *Morris*, 144 F.3d at 380; *Little*, 37 F.3d at 1075. Her claim that the District discriminated against her for transferring "simple but time consuming clerical work" to her must be dismissed.

   iii. *NEISD has not discriminated against Plaintiff because of her age by denying her overtime to accrue personal leave*

Plaintiff next complains that NEISD discriminated against her because of her age by "[p]rohibiting me from accruing extra overtime for sick leave." Plaintiff's Complaint, Docket #1 at ¶ 8a(5). Plaintiff has clarified this claim as follows:

> Q.    Your claim here is that the School District or Ms. Gossen did not allow you to work additional hours for the purpose of banking those hours to cover later absences; isn't that right?
>
> A.    That is correct.

Exh. 10, Mzyk Depo. at p. 105:11–16. This means that Plaintiff was requesting overtime for the sole purpose of accruing additional leave time, and not to earn overtime pay. *See id.* at p. 111:13–20 (Plaintiff confirms that she was not seeking overtime pay).

This claim must fail, because Plaintiff has not identified any similarly situated employees outside of her age group that have been allowed to work overtime in order to accrue additional personal leave:

> Q.    And are you aware of whether Ms. Alvarez, Ms. Trevino, and Ms. Rodriguez specifically made that same request to Ms. Gossen to work later, work overtime for the purpose of banking it to cover future absences?
>
> A.    I have no way of knowing that.

*See id.* at p. 105:17–22.

> Q.    And, again, as we sit here today, ***you're not aware of any other employee whether it's within Community Education Department or outside the Community Education Department that Ms. Gossen approved their request to accrue leave by working overtime***?
>
> A.    ***No, I do not***.

*See id.* at p. 111:21–112:2.

Even if any other employees had asked Ms. Gossen to work overtime in order to accrue additional leave, such a request would have been denied. This is because all overtime is subject to supervisor approval, and Ms. Gossen does not approve overtime requests so that an employee may accrue personal leave for use in the future. *See* Exh. 1, Gossen Affidavit at ¶ 32; Exh. 14. Ms. Gossen made this clear to each of her employees through a February 17, 2014 memorandum, in which she plainly stated that "***[t]ime cannot be made up or accumulated in advance to take time off for [personal or sick day] absences***. You must take accrued earned time." *See* Exh. 1,

Gossen Affidavit at ¶ 32 and Exh. M). Thus, if Ms. Gossen had allowed Plaintiff to work overtime in order to accrue additional sick time, she would have been treating Plaintiff more favorably than everyone else in Community Education. Plaintiff has not explained why she should be treated differently than others in this instance.

Once again, Plaintiff has offered no evidence of similarly situated employees outside of her protected class that the District allowed to work overtime in order to accrue leave to be used for future absences. Accordingly, her age discrimination claims must be dismissed.

### iv.  *Plaintiff has not been subjected to an adverse employment action*

Even if Plaintiff had been able to demonstrate that she had been treated less favorably than similarly situated younger employees, her age discrimination claims must fail because she has not suffered an adverse employment action. *See, e.g.*, *Jackson*, 601 Fed. App'x at 289 (listing elements necessary to prove prima facie case of age discrimination). Adverse employment actions "include only ***ultimate employment decisions*** such as hiring, granting leave, discharging, promoting or compensating." *Allard v. Holder*, 494 Fed. App'x 428, 431 (5th Cir. 2012) (emphasis added) (quotation omitted).

Here, the District has never told Plaintiff that her employment has been terminated. *See* Exh. 1, Gossen Affidavit at ¶ 35; Exh. 10, Mzyk Depo. at p. 119, 6–9 ("Q. [A]s we sit here today, no one has told you that you are being terminated; isn't that right? A. No, they have not."). Plaintiff also has not raised any claim that the District failed to promote her because of her age, changed her compensation because of her age, or failed to grant her leave because of her age. Thus, she has not presented any facts showing that she has been subjected to an "ultimate employment decision." *See Allard*, 494 Fed. App'x at 431.

The only evidence that Plaintiff has pointed to as a potential adverse employment action is the June 6, 2014 performance appraisal issued by Ms. Gossen. *See* Plaintiff's Complaint, Docket #1 at ¶ 8a(3); Exh. 1, Gossen Affidavit at Exh. L. This evaluation does not help Plaintiff, because, "[a]s a matter of law, a negative employment evaluation, even if inaccurate, ***is not an adverse employment action***." *Daniels v. BASF Corp.*, 270 F. Supp. 2d 847, 853 (S.D. Tex. 2003) (emphasis added) (citing *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 373 n.11 (5th Cir. 1998)); *see also Jones v. FJC Security Servs., Inc.*, 40 F. Supp. 3d 840, 849–50 (S.D. Tex. 2014) ("By themselves, documented reprimands, though potentially affecting future employment decisions, do not qualify as adverse employment decisions. ***The same is true of negative performance evaluations, even if they were not deserved***.") (emphasis added) (citations omitted). Thus, Plaintiff cannot use her 2013–2014 school year annual appraisal to prove the existence of an adverse employment action.

Without some showing of an adverse employment action, which she has not made, Plaintiff's age discrimination claims must be dismissed.[5]

## C.   *Plaintiff's Disability Discrimination Claims Fail as a Matter of Law*

The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination under the ADA includes "not

---

[5] Plaintiff's age discrimination claims must also fail, for she has not satisfied the "but-for" standard demonstrating a causal connection that age was the motivating factor for the District's decisions concerning her employment. *See, e.g.*, *Gross*, 557 U.S. at 176; *Squyres*, 782 F.3d at 231. As discussed above, Plaintiff has offered nothing other than her own subjective belief that NEISD has treated her differently than any other employees, and has not compared herself to similarly situated employees outside her protected class that have been treated more favorably than Plaintiff. Plaintiff's subjective belief is not enough to support Plaintiff's claims against summary judgment. *See, e.g.*, *Morris*, 144 F.3d at 380; *Little*, 37 F.3d at 1075.

making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." *Id.* § 12.1112(b)(5)(a).

Plaintiff has raised the same three complaints with respect to disability discrimination as she did for her age discrimination claims: first, that she has been discriminated against because she has been assigned "excessive duties" in comparison to other employees in Community Education; second, that NEISD has transferred "simple but time consuming clerical work" to her that should have been assigned to another employee; and, finally, that the District discriminated against her by keeping her from "accruing extra overtime for sick leave." *See* Plaintiff's Complaint, Docket #1 at ¶¶ 8a(1), (4)-(5). Each of these claims must fail.

1. *Proving a prima facie case of disability discrimination*

To establish a prima facie case of disability discrimination, a plaintiff must show that "(a) she is disabled, has a record of having a disability, or is regarded as disabled, (b) she is qualified for her job, (c) she was subjected to an adverse employment action on account of her disability or the perception of her disability, and (d) she was replaced by or treated less favorably than non-disabled employees." *Flanner v. Chase Inv. Servs. Corp.*, 600 Fed. App'x 914, 922 (5th Cir. 2015) (quotation omitted); *see also Shirley v Precision Castparts Corp.*, 726 F.3d 675, 680 (5th Cir. 2013).

If the employee makes this showing, the employer must then articulate a legitimate, non-discriminatory reason for its employment actions. *See Johnson v. Parkwood Behavioral Health Sys.*, 551 Fed. App'x 753, 756 (5th Cir. 2014) (quoting *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 280 (5th Cir. 2000)). The burden then shifts back to the plaintiff "to establish by a preponderance of the evidence that the legitimate nondiscriminatory reason is mere pretext." *Id.*

i. *Plaintiff has not been assigned "excessive duties" in comparison to other "similarly situated" employees*

Plaintiff first claims disability discrimination by alleging she has been assigned "excessive duties" when compared to Ms. Alvarez, Ms. Rodriguez, and Ms. Trevino. *See* Plaintiff's Complaint, Docket #1 at ¶ 8a(1); Exh. 10, Mzyk Depo. at p. 21:10–12 ("Q. And you specifically compare yourself with Mary Kay Alvarez, Landy Rodriguez, and Iris Trevino? A. That's correct."). As with her age discrimination claims discussed above, Plaintiff's only "facts" supporting this claim is that her current job description lists 23 duties, while Ms. Alvarez's lists 16 duties, Ms. Rodriguez's lists 13 duties, and Ms. Trevino's lists eight duties. *See* Plaintiff's Complaint, Docket #1 at ¶ 8a(1); Exh. 1, Gossen Affidavit at Exh. A; Exhs. 11–13.

This comparison does nothing to help make her case, because neither Ms. Alvarez, Ms. Rodriguez, nor Ms. Trevino are "similarly situated" to Plaintiff. *See Flanner*, 600 Fed. App'x at 922 (listing elements to make prima facie claim for disability discrimination); *Shirley*, 726 F.3d at 680. As explained above, the Fifth Circuit defines "similarly situated" very narrowly, *see Lee*, 574 F.3d at 259–60, and requires that any employees offered for comparison must be "nearly identical" and fall outside the plaintiff's protected class, *see Wheeler*, 415 F.3d at 405. This is a stringent standard, and employees with different responsibilities and dissimilar histories are not considered to be "nearly identical." *See Lee*, 574 F.3d at 259–60.

None of the individuals identified by Plaintiff as having been purportedly treated more favorably are "similarly situated" to her. This is because Ms. Alvarez, Ms. Rodriguez, and Ms. Trevino all have significantly different job responsibilities than Plaintiff, *see* Exh. 1, Gossen Affidavit at Exh. A; Exhs. 11–13, which Plaintiff has acknowledged, *see* Exh. 10, Mzyk Depo. at p. 36:14–23. Additionally, Plaintiff is paid at a higher rate than Ms. Alvarez, Ms. Rodriguez, and Ms. Trevino, *see* Exh. 1, Gossen Affidavit at ¶¶ 37–39 and Exh. A; Exhs. 11–13, another fact

that Plaintiff has recognized, *see* Exh. 10, Mzyk Depo. at p. 22:1–6 ("Q. So the administrative—as the Administrative Assistant to the Executive Director, you are on pay grade C-9 which is a higher pay grade than all the other three individuals; isn't that right? A. Yes, it is."); p. 27:22–24 ("Q. The other people in your department are not on your pay grade, are they? A. No, they're not.).

Thus, the only true comparative employees that Employee could have identified as similarly situated would be the other Administrative Assistants to Executive Directors employed by the District. *See, e.g.*, *Martin*, 432 Fed. App'x at 410–11 (determining employees with different positions and separate job responsibilities were not similarly situated for purposes of making a prima facie case of discrimination); *Hockman*, 282 F. Supp. 2d at 527–28 (concluding that employees were not "similarly situated" or "nearly identical" when they were assigned to different positions and earned different salaries). Plaintiff purposely chose not to make this comparison, even while acknowledging that it would have been the appropriate one to make. *See* Exh. 10, Mzyk Depo. at p. 33:5–13, p. 50:21 ("I wasn't comparing myself to them [other Administrative Assistants to Executive Directors]."). Plaintiff has not produced any evidence showing that she has been treated differently than any other Administrative Assistants to Executive Directors. *See id.* at p. 34:22–35:3.

By failing to identify any non-disabled Administrative Assistants to Executive Directors that have not been assigned "excessive duties," Plaintiff has failed her burden to make an initial prima face case of discrimination under the ADA. *Flanner*, 600 Fed. App'x at 922; *Shirley*, 726 F.3d at 680. Her only "proof" of discrimination is her own subjective belief that she has been discriminated against, *see id.* at p. 14:12–16, which is wholly insufficient to make a prima facie case of discrimination. *See, e.g.*, *Morris*, 144 F.3d at 380; *Little*, 37 F.3d at 1075.

Accordingly, Plaintiff's claim that NEISD has discriminated against her because of her disability by assigning her "excessive duties" must be dismissed.

ii. _NEISD has not assigned "simple but time consuming clerical work" to Plaintiff based on her disability_

Plaintiff next claims that the District has allegedly transferred "simple but time consuming clerical work" in the form of processing water aerobics punch cards, and that this responsibility should be handled by Ms. Rodriguez. _See_ Plaintiff's Complaint, Docket #1 at ¶ 8a(4). As discussed above, NEISD is not sure what to make of this complaint, as Plaintiff's job description clearly lists "[p]repar[ation] and distribu[tion] of punch cards to participants enrolled in classes requiring them." Exh. 1, Gossen Affidavit at Exh. A. Plaintiff was fully aware of this job duty when she accepted her promotion to Ms. Gossen's Administrative Assistant in July 2012. _See id._ at ¶ 7 and Exh. A.

Plaintiff also has not offered any proof that her responsibility for processing and distributing these punch cards was added because of her disability:

> Q.     . . . What evidence do you have or what document have you seen that indicates specifically—that supports your claim that that job duty was added because of your disability?
> A.     I don't have that.
> Q.     Has anyone ever told you that that job duty was added because of your disability?
> A.     No, they haven't.

Exh. 10, Mzyk Depo. at p. 80:15–22.

> Q.     So, other than your own belief, you have nothing else to show the jury in this case that any decision about this job duty had anything to do with your disability, right?
> A.     Not at this time.

_Id._ at p. 81:8–12.

This personal belief by Plaintiff that she has been discriminated against is not enough to overcome summary judgment. _See, e.g._, _Morris_, 144 F.3d at 380; _Little_, 37 F.3d at 1075. Thus,

her disability discrimination claims relating to her belief that the District transferred "simple but time consuming clerical work" to her must be dismissed.

### iii. _NEISD has not discriminated against Plaintiff because of her disability by denying her overtime to accrue personal leave_

Plaintiff also complains that the District has discriminated against her based on her disability by "[p]rohibiting me from accruing extra overtime for sick leave." _See_ Plaintiff's Complaint, Docket #1 at ¶ 8a(5). Plaintiff has clarified this claim to allege that the District "did not allow [her] to work additional hours for the purpose of banking those hours to cover later absences." Exh. 10, Mzyk Depo. at p. 105:11–16, p. 111:13–20.

Plaintiff's claim must be dismissed, however, as she has not identified any non-disabled employees, similarly situated or not, that were allowed to work overtime in order to accrue personal time to use for future absences. Exh. 10, Mzyk Depo. at p. 105:17–22, p. 111:21–112:2. This claim must also fail because Ms. Gossen would not have approved a request by any other employee to work overtime for the sole purpose of earning extra leave days. _See_ Exh. 1, Gossen Affidavit at ¶ 32; Exh. 14. All employees in Community Education are aware of this policy. _See_ Exh. 1, Gossen Affidavit at Exh. M). Thus, Plaintiff's disability claim with respect to denial of overtime must be dismissed.

### iv. _Plaintiff has not been subjected to an adverse employment action_

Finally, even if the Court were to assume that Plaintiff has shown she has been treated less favorably than other non-disabled and similarly situated employees, her disability claims would still have to be dismissed because she has not been subjected to an adverse employment action. _See, e.g._, _Flanner_, 600 Fed. App'x at 922 (listing elements necessary to prove prima facie case of disability discrimination). Such actions consist solely of "ultimate employment decisions." _Allard_, 494 Fed. App'x at 431.

Plaintiff remains employed by the District, and has never been told that her employment has been terminated. *See* Exh. 1, Gossen Affidavit at ¶ 35; Exh. 10, Mzyk Depo. at p. 119, 6–9 ("Q. [A]s we sit here today, no one has told you that you are being terminated; isn't that right? A. No, they have not."). This leaves Plaintiff's June 6, 2014 performance evaluation as the only potential evidence of an adverse employment action. *See* Plaintiff's Complaint, Docket #1 at ¶ 8a(3). But, as established above, negative employment evaluations *are not* considered adverse employment actions. *See, e.g.*, *Jones*, 40 F. Supp. 3d at 849–50; *Daniels*, 270 F. Supp. 2d at 853. Having offered no evidence of an adverse employment action, all of Plaintiff's disability discrimination claims must fail.

**D.** **_Plaintiff's Retaliation Claims Fail as a Matter of Law_**

Plaintiff has also raised claims that the District retaliated against her for filing her EEOC Charges by "increasing assignments to create work over load and work stress" so that Ms. Gossen could prepare "questionable" performance issues that were included in her June 6, 2014 performance evaluation. Plaintiff's Complaint, Docket #1, at ¶ 8a(3).

1. *Proving a prima facie case of retaliation under the ADA and ADEA*

Both the ADA and the ADEA contain provisions making it unlawful for an employer to discriminate against an employee who has opposed a discriminatory practice or who is involved in a discrimination complaint. *See, e.g.*, 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful [by the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]."); 29 U.S.C. § 623(d) ("It shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by [the ADEA], or because such

individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [the ADA].").

The standard for making a prima facie case of retaliation under the ADA and the ADEA is also essentially the same. In order to make this showing, a plaintiff must demonstrate that: (1) she participated in an activity protected under the ADA or the ADEA; (2) the employer took an adverse employment action; and (3) a "causal connection" or "causal link" exists between the protected activity and the adverse employment action. *See, e.g.*, *Pree v. Farmers Ins. Exch.*, 552 Fed. App'x 385, 388 (5th Cir. 2014) (outlining elements of ADEA retaliation claim); *Feist v. La. Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (discussing elements of ADA retaliation claims).

If the plaintiff satisfies this burden, the employer must then come forward with a legitimate, non-retaliatory reason for its employment decisions. *See, e.g.*, *Feist*, 552 Fed. App'x at 454; *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). Once the employer articulates its legitimate and non-discriminatory reason, the burden shifts back to the plaintiff to show that the employer's stated reasons are a mere pretext for retaliation. *See, e.g.*, *Feist*, 552 Fed. App'x at 454; *Sherrod*, 132 F.3d at 1122. In order to avoid summary judgment, the plaintiff must ultimately demonstrate that the adverse action would not have occurred "but for" the protected activity. *See, e.g.*, *Feist*, 552 Fed. App'x at 454; *Sherrod*, 132 F.3d at 1122.

2. *Plaintiff cannot make a prima facie showing of retaliation*

Plaintiff's retaliation argument centers on her belief that, since she filed her January 3, 2014 amendment to her EEOC Charge, Ms. Gossen added assignments to her workload and "started to collect many very questionable reprimand memos into my evaluation file . . . [which] resulted in a severe decline in my June, 2014 annual evaluation." Docket #1 at ¶ 8a(3). The

District recognizes that filing a charge with the EEOC is considered a protected activity under the ADA and the ADEA. However, Plaintiff cannot satisfy the remaining elements necessary to make a prima facie case of retaliation.

To begin, Plaintiff has not been subjected to an adverse employment action, or an "ultimate employment decision." *Allard*, 494 Fed. App'x at 431. As discussed in great detail above, Plaintiff has never been threatened with termination or subjected to a change in pay, duties, or benefits. *See* Exh. 1, Gossen Affidavit at ¶ 35; Exh. 3, Ward Affidavit at ¶ 33; Exh. 10, Mzyk Depo. at p. 119, 6–9 ("Q. [A]s we sit here today, no one has told you that you are being terminated; isn't that right? A. No, they have not."); *see also Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir. 2004) (noting that no adverse employment action occurs if there is no loss of compensation, duties, or benefits). Plaintiff's sole "evidence" of an adverse employment action is the June 6, 2014 performance appraisal issued by Ms. Gossen. *See* Plaintiff's Complaint, Docket #1 at ¶ 8a(3). But, negative evaluations generally are insufficient to prove an adverse employment action. *See, e.g.*, *Jones*, 40 F. Supp. 3d at 849–50; *Daniels*, 270 F. Supp. 2d at 853. Thus, Plaintiff has offered no proof of an adverse employment action, as required to make a prima facie case of retaliation.

Plaintiff also cannot demonstrate a "causal link" or "causal connection" between any of her EEOC filings and her June 6, 2014 performance evaluation.[6] For instance, Plaintiff never told Ms. Gossen that she had filed her EEOC charges, and that Ms. Gossen never discussed the EEOC filings with her:

---

[6] While not specifically addressed as part of her retaliation claim with respect to the June 6, 2014 performance evaluation, Plaintiff has testified that Ms. Gossen never wrote her up "for asking for any kind of accommodation," Exh. 10, Mzyk Depo. at p. 62:14–16, and that no one with the District has "ever told [her] that [she] was being assigned different duties or additional duties because [she] had filed an EEOC charge," *id.* at p. 67:17–21. Thus, Plaintiff cannot show claim retaliation for having requested an accommodation or that she was assigned any duties because of her EEOC filings.

> Q.     Now, ma'am, did you tell anybody in your department that you had file
>        EEOC charges?
> A.     No, I did not.

Exh. 10, Mzyk Depo. at p. 59:14–16.

> Q.     Well, did Ms. Gossen ever discuss—has she ever discussed with you that
>        you filed your EEOC charges?
> A.     No.

*Id.* at p. 59:25–60:2. Additionally, Plaintiff has testified that she has no knowledge that "Ms.

Gossen was aware that [she] had filed EEOC charges" at any time that Plaintiff's performance

was evaluated. *Id.* at pp. 62:2–13, 70:14–22. Thus, Plaintiff's retaliation claims must be

dismissed.[7]

3.  *The District has offered legitimate, non-retaliatory reasons for the June 6, 2014
    performance evaluation*

Even if Plaintiff were able to make a prima facie showing of retaliation under the ADA

and the ADEA, NEISD has an opportunity to present a legitimate, non-discriminatory reason for

the June 6, 2014 evaluation. *See, e.g.*, *Feist*, 552 Fed. App'x at 454); *Sherrod*, 132 F.3d at 1122.

Here, the only evidence in the record is that the June 6, 2014 performance evaluation was

the culmination of several issues documented by Ms. Gossen from January–June, 2014. These

included, but are not limited to: complaints about errors in issuing and purchasing water aerobics

cards; registering customers and their family members for the wrong classes; failing to keep up

with phone calls and e-mails; errors in processing credit card orders and registration payments;

---

[7] It is possible, in limited circumstances, for a poor performance evaluation to be considered an "adverse employment action" for purposes of proving retaliation. However, this requires a showing that the employer's actions "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Davis v. Dallas Ind. Sch. Dist.*, 448 Fed. App'x 485, 494 (5th Cir. 2011) (quotation omitted). Plaintiff, however, has not made this showing. Even if she had, there still must have been enough temporal proximity between her January 3, 2014 amended EEOC charge and Ms. Gossen's June 6, 2014 performance evaluation. Here, there is a sixth-month gap between those events. *See* Exh. 7; *see also* Exh. 1, Gossen Affidavit at Exh. L). This gap is too long to show the temporal proximity necessary to prove causation. *See, e.g.*, *Rasco v. Potter*, 265 Fed. App'x 279, 283 (5th Cir. 2008) (four month time lapse insufficient to establish temporal proximity); *Russell v. Univ. of Tex. Permian Basin*, 234 Fed. App'x 195, 206 (5th Cir. 2007) (six month gap not enough to show temporal proximity).

errors in communications with customers; and errors in processing and billing for facility maintenance requests. *See* Exh. 1, Gossen Affidavit at ¶ 28 and Exh. K. Each of these concerns are directly related to Plaintiff's job functions, and are therefore legitimate and non-discriminatory reasons for the June 6, 2014 performance evaluation. *See id.* at Exh. A.

Once the District articulates its legitimate and non-discriminatory reasons, Plaintiff must show that the proffered reasons are a "mere pretext" for retaliation, and that the June 6, 2014 performance evaluation would not have issued "but for" her filing of an EEOC charge. *See, e.g.*, *Feist*, 552 Fed. App'x at 454; *Sherrod*, 132 F.3d at 1122. As summarized above, Plaintiff cannot make this showing, as she has testified that she never told Ms. Gossen about her EEOC filings and that Ms. Gossen never discussed the EEOC filings with her at any time, *see* Exh. 10, Mzyk Depo. at p. 59:14–16, and that she has no proof that Ms. Gossen was even aware of the EEOC filings, *see id.* at pp. 62:2–13, 70:14–22. Additionally, Ms. Gossen has stated that her evaluation of Plaintiff's performance was not motivated in any way by Plaintiff's EEOC filings, and that no one with the District instructed her to "downgrade" Plaintiff's performance because of her EEOC filings. *See* Exh. 1, Gossen Affidavit at ¶¶ 28–29.

For each of the reasons discussed above, Plaintiff's ADA and ADEA retaliation claims must be dismissed.

### E.     *Plaintiff's Failure-to-Accommodate Claims Fail as a Matter of Law*

Plaintiff's final claims in her lawsuit relate to her belief that NEISD has denied her requests for accommodations on a handful of occasions. As identified in her EEOC filings, her Complaint, and her deposition, Plaintiff has identified two occasions on which she claims to have been denied accommodations: (1) a September 25, 2012 denial of her request to be relieved of her duties to cover Community Education reception desk, to transfer her responsibility over

Community Education's voicemail to a co-worker, and to work overtime in order to accrue extra leave time to cover future absences, *see* Plaintiff's Complaint, Docket #1 at ¶ 8a(2); Exh. 5; Exh. 10, Mzyk Depo. at p. 41:11–15 ("Q. So you're asking the ladies and gentlemen of the jury to find that it's somehow discriminatory because calls that aren't answered by others go into your voicemail? A. Yes[.]"); and (2) the District "forcing" Plaintiff to submit an application for FMLA leave rather than grant her August 5, 2013 request for accommodations upon her return to work following a week-long hospital stay, *see* Plaintiff's Complaint, Docket #1 at ¶ 8a(6); Exh. 101, Mzyk Depo. at p. 94:6 ("They forced me to go on FMLA.").

1. *Proving a prima facie case of failure-to-retaliate*

Under the ADA, employers are prohibited from failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." 42 U.S.C. § 12112(b)(5)(A). In order to prevail in a failure-to-accommodate claim, a plaintiff must show that (1) she is a qualified individual with a disability; (2) the employer knew of the disability and its consequential limitations; and (3) the employer failed to make "reasonable accommodations" for the known limitations. *See Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 2247 (5th Cir. 2013); *Feist*, 730 F.3d at 452. As to the third element, "the ADA requires that the employer and employee engage in an interactive process to determine a reasonable accommodation." *Cortez v. Raytheon Co.*, 663 F. Supp. 2d 514, 524 (N.D. Tex. 2009) (quotation omitted).

2. *NEISD did not fail to reasonably accommodate Plaintiff in September 2012 by not relieving her of certain duties, which was caused by Plaintiff's refusal to participate in the ADA interactive process*

On or about September 25, 2012, Plaintiff gave Ms. Gossen a letter stating that her leukemia medication had been switched and that she had been advised to "avoid close fact-to-fact [*sic*] contact with the general public," and requesting relief in her duties at the reception desk

and in processing GED registrations for an unspecified time. Exh. 1, Gossen Affidavit at ¶ 8 and Exh. B.

After receiving this letter, the District was required to begin an interactive process with Plaintiff to determine what reasonable accommodations were potentially available. *See, e.g.*, *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 699 (5th Cir. 2014). NEISD met this obligation when Mr. Ward, the District's Director of Risk Management and Ms. Gonzales, the ADA Coordinator, met with Plaintiff and Ms. Gossen on September 25 to discuss her requested accommodations. *See* Exh. 1, Gossen Affidavit at ¶ 9; Exh. 3, Ward Affidavit at ¶ 5. During this meeting, the parties also discussed a second letter from Plaintiff, dated September 25, 2012, in which Plaintiff reiterated that she had been advised to "avoid close face-to-face contact with the general public," and that she would try to "keep a safe distance" from any ill co-workers. *See* Exh. 3, Ward Affidavit at ¶ 7 and Exh. A. Mr. Ward also explained to Plaintiff that the District would need additional information from her physician in order to make a determination on her request to be relieved of her duties at the reception desk and to process GED registrations. *See* Exh. 1, Gossen Affidavit at ¶ 9; Exh. 3, Ward Affidavit at ¶ 8. He then gave Plaintiff a release form to sign and provide to her physician so that the District could obtain updated information on her condition. *See* Exh. 3, Ward Affidavit at ¶ 10.

Mr. Ward followed up with Plaintiff on September 27, 2012, and asked whether she had been able to discuss the District's request with her physician. *See id.* at ¶ 13 and Exh. D. Plaintiff replied that she did not see any reason to provide additional information, and that she would not share any more details related to her condition. *See id.* at ¶ 14 and Exh. E. Following Plaintiff's reply, it was impossible for the District to move forward with the ADA interactive practice to discuss Plaintiff's requested accommodations. *See* Exh. 3, Ward Affidavit at ¶ 15.

It is well-settled that an employee's failure to participate in the interactive process bars a plaintiff's ADA claim. *See Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011) ("[A]n employer **cannot be found to have violated the ADA** when responsibility for the breakdown of the informal, interactive process is traceable to the employee and not the employer.") (emphasis added) (quotation omitted); *Lockhart v. Sys. Made Simple, Inc.*, 66 F. Supp. 3d 847, 861 (W.D. Tex. 2014) ("[A]n employee's ADA claim will be barred if the employee fails to participate in the good faith interactive process, or causes a breakdown in communication during the good faith interactive process."). Thus, Plaitniff's claim that NEISD failed to accommodate her by relieving her of her duties at the reception desk and in processing GED registrations must be dismissed.

3. *Plaintiff's request for having voicemail responsibilities removed from her job is not a reasonable accommodation under the ADA*

Plaintiff also complains that, beginning in June 2003, the District has failed to accommodate her by refusing to transfer responsibility over the main line voicemail to another employee with "light work duties." Plaintiff's Complaint, Docket #1 at ¶ 8a(2). To begin, the District objects to the inclusion of any claims of failure-to-accommodate going back to 2003. Plaintiff was required to file a charge of discrimination within 300 days of any alleged unlawful employment practice, meaning that any complaints of discrimination prior to September 25, 2012 should be dismissed. *See* 29 U.S.C. § 626(d)(1); *see also Martin v. Lennox Int'l Inc.*, 342 Fed. App'x 15, 18 (5th Cir. 2009); *Dixon v. Grande Commcn's Networks LLC*, No. MO-13-CV-085, 2015 WL 139070, at *4 (W.D. Tex. Jan. 8, 2015) (dismissing discrimination complaints related to events occurring more than 300 days before plaintiff's EEOC charge).

But, no matter how far back Plaintiff is allowed to reach, her claim must fail because her request for her voicemail responsibilities to be taken from her is not a reasonable

accommodation. The ADA prohibits discrimination on the basis of disability and requires reasonable accommodations by employers, but it **does not** require an employer to "take affirmative action in favor of people with disabilities or to create a new job for them." *Smith v. Shinseki*, 716 F. Supp. 2d 556, 566 (S.D. Tex. 2009) (citing *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 808–810 (5th Cir. 1997)). Additionally, the ADA "**does not require an employer to relieve an employee of any essential functions of his or her job,** modify those duties, **reassign existing employees to perform those jobs**, or hire new employees to do so." *LHC Grp., Inc.*, 773 F.3d at 698 (emphasis added) (quotation omitted); *see also Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702, 709 (5th Cir. 1997) ("We cannot say that [an employee] can perform the essential functions of the job with reasonable accommodation, if the only successful accommodation is for [the employee] not to perform those essential functions."); *Bennett v. Calabrian Chemicals Corp.*, 324 F. Supp. 2d 815, 837 (E.D. Tex. 2004) (noting the ADA "does not require an employer to transfer any of the essential functions of a disabled employee's job in order to make reasonable accommodation for his disability" or to implement an accommodation that would "result in other employees having to work harder or longer").

Retrieving voicemail from the Community Education main line has continuously been an essential function of Plaitniff's job since July 2012, when she accepted a promotion to work as Ms. Gossen's Administrative Assistant. *See* Exh. 1, Gossen Affidavit at ¶ 7 and Exh. A. Plaintiff was fully aware that this was one of her responsibilities at the time she accepted the promotion. *See* Exh. 10, Mzyk Dep. at pp. 37:25–38:20 (Plaintiff acknowledges that retrieving main line voicemail messages was part of her job description at the time of her promotion). Plaintiff also recognizes that no other employees in Community Education are responsible for retrieving voicemail messages:

> Q.    Mrs. Mzyk, I'm asking you about voicemail. You're telling me that the other job descriptions for these employees do not include retrieving voicemail messages:
>
> A.    That's correct. ***It's only on my job description***.

*Id.* at p. 44:3–8 (emphasis added), p. 43:13–16 ("Q. Okay, Ma'am. But is one of their responsibilities to retrieve voicemail messages for Community Ed? A. No, it's not."), p. 76:14–17 (Plaintiff acknowledges retrieving voicemail is not part of Ms. Rodriguez's job description), p. 77:11–16 (Plaintiff acknowledges retrieving voicemail is not part of Ms. Alvarez's job description).

Thus, it is clear that no other Community Education employee is responsible for monitoring the main line voicemail. *See* Exh. 1, Gossen Affidavit at ¶ 41. The District has also made clear that it cannot transfer this responsibility to anyone else in Community Education without substantially interfering with their essential job functions. *See id.* at ¶ 41.

The District therefore has never been required to transfer Plaintiff's responsibility for retrieving voicemail responsibilities to another employee, as the ADA does not require NEISD to relieve her of her essential job functions or to reassign that duty to any other employees. *See, e.g.*, *LHC Grp., Inc.*, 773 F.3d at 698; *Barber*, 130 F.3d at 709; *Bennett*, 324 F. Supp. 2d at 837. Petitioner's failure-to-accommodate claim must be dismissed.

4.    *NEISD did not fail to reasonably accommodate Plaintiff by not granting her requested overtime so that she could accrue additional leave for future absences*

While not specifically addressed in her Complaint, Plaintiff did claim in her initial July 22, 2013 EEOC filing that NEISD denied her a reasonable accommodation by not allowing her to "come in early and/or stay late to make up time for [her] doctors' appointments" and to accrue extra leave time. *See* Exh. 5. In making this claim, Plaintiff misses the point of requesting an accommodation, which is to obtain assistance in performing the essential functions of her job. *See, e.g.*, *Molina v. DSI Rental, Inc.*, 840 F. Supp. 2d 984, 1003 (W.D. Tex. 2012) (recognizing

the ADA's offering of accommodations to enable an employee to perform the essential functions of the job).

Plaintiff has **never** requested overtime to help her meet the essential functions of her job. Instead, she has made clear that the only reason she requested overtime was to "bank" those hours to cover later absences. Exh. 10, Mzyk Depo. at p. 105:11–16, p. 111:13–20 (Plaintiff confirms that she was not requesting additional work in order to earn overtime pay). As demonstrated above, the District does **not** approve overtime for that purpose, and overtime is allowed only when approved by a supervisor for legitimate business reasons. *See* Exh. 1, Gossen Affidavit at ¶ 32 and Exh. M; Exh. 14. Plaintiff is well aware of this policy. *See* Exh. 1, Gossen Affidavit at Exh. M. This claim must also be dismissed.

5. *NEISD did not "force" Plaintiff to take FMLA leave rather than grant her reasonable accommodations*

Plaintiff's final claim in her Complaint is that the District failed to accommodate her disability by "forcing" her to take FMLA leave beginning on August 5, 2013 instead of allowing her to return to work after a week-long stay in the hospital. *See* Plaintiff's Complaint, Docket #1 at ¶ 8a(6). This claim cannot survive summary judgment.

As summarized above, Plaintiff informed Ms. Gossen on or about July 23, 2013, that she would miss work the following week due to a scheduled hospitalization. *See* Exh. 1, Gossen Affidavit at ¶ 11. When Plaintiff returned to work on August 5, 2013, she brought two doctors' notes with her, which plainly stated that she would "need to wear a mask and her work may be interrupted by a need for frequent doctor visits," *see id.* at ¶ 12 and Exh. C, and that Plaintiff "may not be around large groups of people, [and] should limit contact with strangers" *see id.* at ¶ 13 and Exh. D. Plaintiff also gave Ms. Gossen a letter she wrote stating that she would "need to go to the clinic every other day for blood work" and that she needed to "avoid being close to sick

people." *See id.* at ¶ 14 and Exh. E. Finally, Plaintiff also sent an e-mail to the Community Education Department instructing everyone to "let me know if you are running a fever or not feeling well as I am not to be exposed to any illness." *See id.* at ¶ 15 and Exh. F.

Upon receiving this information, NEISD immediately initiated the interactive process required by the ADA by convening a meeting between Mr. Ward, Ms. Gonzales, Ms. Gossen, and Plaintiff. *See, e.g.*, *LHC Grp., Inc.*, 773 F.3d at 699; *see also* Exh. 1, Gossen Affidavit at ¶ 16; Exh. 3, Ward Affidavit at ¶ 16. The parties discussed their concern for Plaintiff's condition, and whether or not the District could accommodate Plaintiff's request to be separated from anyone that might be ill. *See* Exh. 1, Gossen Affidavit at ¶ 16; Exh. 3, Ward Affidavit at ¶ 20. Ultimately, it was decided that the District could not provide Plaintiff with her requested accommodations, because there was no way for Plaintiff to perform her essential job functions without being able to personally interact with people, as she was responsible for assisting customers, her co-workers, and other District visitors to Community Education. *See* Exh. 1, Gossen Affidavit at ¶ 16; Exh. 3, Ward Affidavit at ¶¶ 20–21. The District also could not require everyone who came near Plaintiff's work station to notify her if they were ill, meaning that Plaintiff ran a significant risk of being exposed to an illness despite her statements that she could ***not*** be exposed to any sickness. *See* Exh. 1, Gossen Affidavit at ¶ 16; Exh. 3, Ward Affidavit at ¶ 20; *see also* Exh. 10, Mzyk Depo. at p. 96:20–24 (Plaintiff acknowledges that she could have been exposed to an infection if she returned to work, and that this "could have posed a health risk for her").

At the conclusion of this meeting, it was understood that Plaintiff's presence at work could result in exposure to an illness that her weakened immune system could not combat, and that it would be best for Plaintiff to stay at home in an environment where she could recover. *See*

Exh. 1, Gossen Affidavit at ¶ 16; Exh. 3, Ward Affidavit at ¶ 22. Everyone also understood that Plaintiff would regularly need to miss work for doctor visits, and that regular attendance was an essential function of her job. *See* Exh. 1, Gossen Affidavit at ¶ 16 and Exh. A; Exh. 3, Ward Affidavit at ¶ 21; Exh. 10, Mzyk Depo. at p. 98:1–4 (Plaintiff testifies that she was going to the doctor "several—sometimes two or three times a week"). The parties then discussed the potential for Plaintiff to take FMLA leave, and Plaintiff submitted a written request for leave. *See* Exh. 1, Gossen Affidavit at ¶ 16; Exh. 3, Ward Affidavit at ¶ 22 and Exh. F. At no point was Plaintiff coerced or forced to submit a request for leave. *See* Exh. 1, Gossen Affidavit at ¶ 16; Exh. 3, Ward Affidavit at ¶ 23.

Plaintiff returned home after this meeting, and did not report back to work until October 7, 2013. *See* Exh. 1, Gossen Affidavit at ¶ 18–19; Exh. 3, Ward Affidavit at ¶ 25. During the time she was on FMLA leave, Plaintiff did not provide any information from her doctors stating that she should not be out on leave or that she could return to work with or without any accommodations.[8] *See* Exh. 11, Mzyk Depo. at p. 98:12–16.

The District respectfully submits that, due to the accommodations requested by Plaintiff on August 5, 2013, she was not a "qualified individual with a disability" under the ADA. *See, e.g.*, *Neely*, 735 F.3d at 247 (outlining elements necessary to prove failure-to-accommodate claim). This is because "an individual is not qualified for a job *if there is a genuine substantial risk* that he or she could be injured . . . *and the employer cannot modify the job to eliminate that risk*." *Molina*, 840 F. Supp. 2d at 996 (emphasis added). Here, the District had no way to modify Plaitniff's essential job functions (which included regular attendance and constant interaction with co-workers and customers) in a manner that would protect her from the genuine and

---

[8] A copy of the District's FMLA policy is included as Exhibit 15 to this Motion.

substantial risk of exposure to illness, which both Plaintiff and her doctors had told the District would be potentially harmful to her health. *See* Exh. 1, Gossen Affidavit at ¶¶ 12–16; Exh. 3, Ward Affidavit at ¶¶ 20–21. Because Plaintiff's requested accommodations were largely to exempt her from performing essential job functions, she was "not qualified and not protected by the ADA." *Jones v. Kerrville State Hosp., et al.*, 142 F.3d 263, 265 (5th Cir. 1998); *see also Barber*, 130 F.3d at 709 ("We cannot say that [the employee] can perform the essential functions of the job without reasonable accommodation, if the only successful accommodation is for [the employee] not to perform those essential functions.").

Plaintiff also has not shown that the District treated other employees with health issues differently by allowing them to continue working instead of taking leave:

> Q.   So, as it stands right now, you can't tell me that you were treated differently than any other employee; is that correct?
> A.   Yes.
> Q.   Okay. Now, ultimately, are you aware of any other employees who provided to the School District that they could not be around sick people and had to avoid contact with unsanitary surfaces?
> A.   No, I'm not.
> Q.   So, as you sit here today, you can't tell me that there's another employee with similar problems that was allowed to continue working as opposed to being told that they had to go out on FMLA leave, right?
> A.   No, I can't.

Exh. 10, Mzyk Depo. at p. 93:8–22.

Because Plaintiff was not otherwise qualified to perform the essential functions of her job upon returning to work on August 5, 2013, she was not protected by the ADA at that time and, as a matter of law, NEISD is entitled to summary judgment on Plaintiff's failure-to-accommodate claim.

## IV.   CONCLUSION

For the reasons discussed above, NEISD respectfully submits that it is entitled to judgment as a matter of law because there is no genuine issue as to any material fact related to Plaintiff's claims of discrimination and retaliation under the ADEA and failure to accommodate under the ADA. Accordingly, the District respectfully requests that the Court grant this Motion for Summary Judgment, and further order any other relief to which the District may justly be entitled.

Respectfully submitted,

**SCHULMAN, LOPEZ,**
**HOFFER & ADELSTEIN, LLP**

RICARDO R. LOPEZ
State Bar No. 24013059
E-Mail: rlopez@slh-law.com
ALLEN M. KELLER
State Bar No. 24070039
E-Mail: akeller@slh-law.com
517 Soledad Street
San Antonio, Texas 78205
Telephone: (210) 538-5385
Facsimile:  (210) 538-5384
**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the July 24, 2015, the foregoing Defendant's Motion for Summary

Judgment has been served upon Plaintiff/Counter-Defendant *pro se* in this proceeding, via Certified

Mail Return Receipt Requested, as follows:

Mrs. Annie L. Mzyk
3014 Renker Drive
San Antonio, Texas 78217

_____
Attorney for Defendants